### GRAND TRUNK RY. CO. v. CENTRAL VERMONT R. CO.

(Circuit Court, D. Vermont. June 4, 1898.)

1. RAILROADS—RECEIVERSHIP—PREFERRED CLAIMS FOR OPERATING EXPENSES.
   Claims for supplies used in operating a railroad during a receivership, and for six months prior thereto, are entitled to preferred payment from the funds in the hands of the receivers, as against a mortgage on which the first default of interest occurred during the receivership, where the stock of supplies coming into the hands of the receivers exceeded the amount of such claims, and it appears that the net earnings under the receivership to the time of default on the mortgage interest, together with the betterments made, also largely exceeds such claims.

2. SAME—ERRONEOUS PAYMENTS.
   The fact that claims not entitled to preference have been improperly paid from funds in the hands of receivers does not entitle a mortgagee to insist that the amount shall be deducted from funds applicable to preferred claims.

This was a hearing in the matter of the receivership of the Central Vermont Railroad, arising on objections by the American Loan & Trust Company, mortgagee, to the allowance and payment, as preferred claims, of amounts due for operating supplies.

Henry G. Newton, for claimants.

Moorfield Storey and Elmer P. Howe, for mortgagees.

WHEELER, District Judge. When receivers of the defendant's roads and property were appointed, March 20, 1896, they were directed to pay claims for, among other things, supplies used in operating the roads during the six months next previous. Afterwards, May 29th, on motion of the American Loan & Trust Company, mortgagee, payment was restrained for classifying the accounts and funds. Upon classified accounts filed by the receivers, and a motion to so modify the restraining order as to allow payment of such claims as accrued on the New London Northern system, and those less than $100 each and 25 per cent. of others that accrued on the main line, payment of the face of the New London claims and of the small claims has been allowed, and that part of the motion relating to the main line has been heard. The classification was asked, and the payment has been opposed, because, as has been said, the payments would or might, if made, come out of funds belonging to the mortgagee. All of the claims appear to have amounted to $284,083.48. The receivers appear to have taken over from the defendant stocks of supplies on hand amounting to $271,722.33; of station agents,

$142,879.96; and other miscellaneous items amounting to $82,267.68,—in all, $496,869.97. The conditions of the mortgages were not broken till January 1, 1897, and the mortgagees would not be entitled to possession, nor to the net earnings as profits, till then. By conservative estimates as to what are operating expenses and what are permanent improvements, the roads now in question much more than paid all operating expenses from the beginning of the receivership to the breach of the conditions of the mortgages. Besides this, the excess of net earnings, which came to the hands of the receivers, over operating expenses and fixed charges paid by them before breach of the conditions of the mortgages, would seem to exceed the amount of these preferred claims, and, with the permanent improvements made by the receivers during that time, would largely exceed them. In this view, the payment of the residue of these preferred claims would not come out of the mortgaged property, nor out of any net earnings to which the mortgagees may be entitled, but out of the general funds of the receivership arising from the operation of the roads before the mortgagees became entitled to possession, or to claim the net earnings.

Some suggestion has been made that claims not properly of this class were paid before the stay, which may have exhausted the funds applicable to those unpaid. But such diversion, if any, should be corrected otherwise than from funds belonging to these claimants. This subject has lately been before the supreme court of the United States in Virginia & A. Coal Co. v. Central Railroad & Banking Co. of Georgia, 18 Sup. Ct. 657 (decided May 9). The cases are there reviewed, and the statement from Fosdick v. Schall, 99 U. S. 252, that "every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim on the income," is again approved. Mr. Justice White for the court further said:

"It was thus settled that, where coal is purchased by a railroad company for use in operating lines of railway owned and controlled by it, in order that they may be continued as a going concern, and where it was the expectation of the parties that the coal was to be paid for out of current earnings, the indebtedness, as between the party furnishing the materials and supplies and the holders of bonds secured by a mortgage upon the property, is a charge in equity on the continuing income, as well that which may come into the hands of a court after a receiver has been appointed as that before. It is immaterial in such case, in determining the right to be compensated out of the surplus earnings of the receivership, whether or not during the operation of the railroad by the company there had been a diversion of income for the benefit of the mortgage bondholders, either in payment of interest on mortgage bonds or expenditures for permanent improvements upon the property. Nor is the equity of a current supply claimant, in subsequent income arising from the operation of a railroad under the direction of the court, affected by the fact that, while the company is operating its road, its income is misappropriated and diverted to purposes which do not inure to the benefit of the mortgage bondholders, and are foreign to the beneficial maintenance, preservation, and improvement of the property."

In any view of the situation in this case, upon the principles so settled, these claimants appear to be entitled to payment from the earnings of the roads available for that purpose, and sufficient of

them appear to be available early in July for this 25 per cent. The stay should be so modified as to permit this payment.

Some question has been made about the coming of some of the claims within the time, and being for the proper purpose; and opportunity should be afforded for parties interested to make objection specifically to particular claims for either of these reasons. The list is on file, and the time before the 1st of July seems sufficient for filing objections to any of them. Stay so modified as to permit payment after the 5th of July of 25 per cent. of claims against which specific objections are not filed by the 1st of July, and objections to stand for disposition on the 5th of July.